IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|                       |   |                                   |
|-----------------------|---|-----------------------------------|
| MESFIN BEZU,          | ) |                                   |
|                       | ) |                                   |
|     Plaintiff,        | ) |                                   |
|                       | ) |                                   |
| v.                    | ) | Civil Action No. 1:14-cv-01014    |
|                       | ) |                                   |
| BANK OF AMERICA, N.A.,| ) |                                   |
|                       | ) |                                   |
|     Defendant.        | ) |                                   |
|                       | ) |                                   |

**ORDER**

THIS MATTER comes before the Court on Defendant's Motion
for Summary Judgment.

On July 25, 2014, Plaintiff filed this action against
Defendant in the Fairfax County Circuit Court, alleging two
counts of defamation per se arising out of statements that
Plaintiff contends were made to him and others during and after
his employment. On August 28, 2014, Defendant timely removed
this case to this Court based on diversity jurisdiction.
Defendant moved to dismiss the Complaint for failure to state a
claim based on lack of specificity, lack of publication, and
privilege. Plaintiff opposed the dismissal; Defendant replied;
and on October 27, 2014, this Court dismissed Plaintiff's
Complaint with leave to amend.

On November 12, 2014, Plaintiff filed an Amended Complaint,

1

in which he attempted to set forth more specifically the allegations against Defendant. Plaintiff's Amended Complaint contains three counts: Count I: "Negligence – Defamation Per Se"; Count II: "Intentional or Negligent Infliction of Emotional Distress Defamation Per Se"; and Count III: "Malice."

As of July 1, 2013, Plaintiff was a Personal Banker at Defendant's Arlington Court House Banking Center in Arlington, Virginia. On July 26, 2013, Defendant terminated Plaintiff's employment. Edward Roncoroni, Plaintiff's Consumer Market Manager, and Jerry Lotito, another Consumer Market Manager, communicated the termination decision to Plaintiff. Following the termination meeting, Roncoroni reported to Defendant's Protective Services Department that Plaintiff made threatening statements during the meeting, such as, "you will pay for this" and "the company will pay for this." Later that day, Protective Services received a report that Plaintiff returned to the Arlington Court House Banking Center to obtain customer information. Plaintiff was told that the police would be called if he did not leave.

On July 27, 2013, Plaintiff called Protective Services to request permission to return to the Arlington Court House Banking Center to clear out his safe deposit box. Protective Services employee Maggie Cash reported that when she mentioned Roncoroni's name, Plaintiff stated that he could "punch him in

2

the face." Plaintiff was permitted to visit the banking center to retrieve items from his safe deposit box that day.

Michael Bergbauer, one of Defendant's Protective Services managers, telephoned Plaintiff on July 29 to discuss the events of July 27. On July 30, Plaintiff sent a message to an email address for Brian Moynihan, CEO of Defendant, copying other Bank executives. The email came from mesfin@mybankofamericastory.com and attached a letter threatening to sue Defendant.

On August 1, 2013, Defendant sent Plaintiff letters notifying him that his accounts were to be closed.  On August 13, Messay Degefu, a Personal Banker at Defendant's Lake Barcroft Banking Center, reported to Protective Services that Plaintiff requested a copy of a check that Plaintiff cashed, then requested that the teller photograph the check. On August 14, Defendant sent Plaintiff a letter notifying him that his safe deposit box account would be closed.

On August 16, 2013, Hilda Aparicio, a Bank employee, reported to Protective Services that Plaintiff visited the Lake Barcroft Banking Center again. Aparicio reported that Plaintiff asked about Defendant's procedures and attempted to cash a stale money order from 2010. The same day, Alfredo Piedrahita, Banking Center Manager at the Arlington Main Banking Center, reported to Protective Services that Plaintiff went to the Arlington

3

Main Banking Center, asked about the security guard's hours, and attempted to cash a stale money order from 2010.

On August 22, 2013, Defendant wrote to Plaintiff informing him that it would no longer conduct business with him and that he was prohibited from entering or remaining on Defendant's property.

On August 26, 2013, Chimedregzen Altandush, an employee at Plaintiff's former Banking Center, reported to Protective Services that she observed Plaintiff walking around outside the Banking Center. There were internal communications among Bank employees regarding the reports to corporate security about Plaintiff's actions following his termination and the decisions to close Plaintiff's accounts and to no longer do business with Plaintiff.

Abiy Emiru, Plaintiff's friend and fellow church member, testified that at some point during the summer of 2013 he went to the Arlington Court House Banking Center to visit Plaintiff. Emiru was approached by a female employee, whom he told that he was looking for Plaintiff. According to Emiru, the employee said, "[h]e is not working anymore here." When Emiru asked what she meant, she replied, "[h]e is fired." There was no further conversation, and Emiru left the Banking Center.

On or about September 10, 2013, Plaintiff hosted a party in his home. Emiru attended. Emiru saw one of Defendant's

4

letters addressed to Plaintiff that Plaintiff left out on his table. Emiru recalls that the letter included the term "arrested." Emiru stated in deposition that neither the statement by the Defendant employee nor the letter affected his opinion of Plaintiff.

On or about February 2014, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). On June 10, 2014, Defendant, through counsel, submitted a position statement to the EEOC in response to the charge of discrimination filed by Plaintiff. On or about October 23, 2014, Reuben Daniels, EEOC District Director, informed Plaintiff in writing that the Commission was unable to identify a statutory violation.

Plaintiff testified that he has had many conversations with individuals about his termination from Defendant in which he told them "exactly what happened," and told them that Defendant accused him of threatening associates and bringing a gun to Defendant's banking center. No such accusations are verified in the record.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
An otherwise properly supported summary judgment motion will not
be defeated by the existence of a dispute as to immaterial
facts; only disputes over facts that might affect the outcome of
the trial will properly preclude the entry of summary judgment.
Id. at 248.

Plaintiff bears the initial burden of proof as to each and
every element of his claims. See United States ex rel. Berge v.
Bd. of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1462
(4th Cir. 1997). "Conclusory or speculative allegations do not
suffice, nor does a mere scintilla of evidence in support of
[the nonmoving party's] case." Thompson v. Potomac Elec. Power
Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal citation
omitted) (internal quotation marks omitted); Hoschar v.
Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).

In the case at hand, material facts are not in dispute. As
a matter of law, Defendant is entitled to summary judgment on
all three counts. There is no evidence that defamatory
statements were made; Plaintiff's arguments for both negligent
and intentional infliction of emotional distress fail as a
matter of law; and Plaintiff's "malice" claim is not a
cognizable tort.

Count One brings a negligent defamation *per se* claim. Under
Virginia law, a plaintiff seeking to recover for defamation *per*

6

*se* must allege a publication of false information concerning the plaintiff that tends to defame the plaintiff's reputation. Hatfill v. New York Times Co., 416 F.3d 320, 330 (4th Cir. 2005).

A false statement contains more than "minor or irrelevant inaccuracies." Jordan v. Kollman, 269 Va. 569, at 576. Here, nothing in the record demonstrates any inaccuracies in statements made by Defendant's employees regarding Plaintiff's firing. A defamatory statement tends to "harm the reputation of another [so] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). There is no such evidence in the case at hand. Defamatory words "make the plaintiff appear odious, infamous, or ridiculous." Id. Publication requires proof that a defendant communicated the actionable statement to a third party, without a privilege to do so. Montgomery Ward & Co. v. Nance, 165 Va. 363, 379 (1935). Here, Defendant's only publication was private correspondence to the EEOC in response to an action initiated by Plaintiff; hardly unprivileged, and brought on by Plaintiff himself.

In his Amended Complaint, Plaintiff alleges that many people heard or read the following statements by individuals at Defendant:

- **Statement I:** "[Plaintiff] went to the Arlington Court house banking center and threatened associates with his gun." "After [Plaintiff] was terminated, he went to Arlington Courthouse Banking Center and threatened associates with his gun. Since [Plaintiff] is dangerous who has weapons, if he comes to your banking center, immediately call corporate security and law enforcement officials."
- **Statement II:** "[Plaintiff] was terminated for doing a bad job and he was [sic] also made threatening statements after he was terminated."
- **Statement III:** "[Plaintiff]'s Bank of America accounts are closed due to overdraft and fraud."
- **Statement IV:** "[Plaintiff] were [sic] terminated after it was determined that [Plaintiff] violated bank policies and federal regulations after having been counseled throughout his long tenure regarding such violation by his supervisors."

The record is void of evidence that these statements were made by any of Defendant's employees.

Plaintiff testified in deposition that he believes that Statement One was made by Roncoroni (Plaintiff's second-level supervisor) in email; by Roncoroni and Charmaine Cheng (Plaintiff's first- and second-level supervisors) to Bergbauer (a Bank Protective Services Manager); and by Bergbauer to Plaintiff. Despite Defendant's production of emails, there is no evidence that the alleged statement was emailed by any of Defendant's employees. No one testified to the existence of the statement. Though Plaintiff alleges that he recorded a conversation with a Bank employee in which she allegedly described the email, and despite a court order, Plaintiff failed or refused to produce the recording.

Regarding Statement II, Plaintiff alleges Defendant told four individuals that Plaintiff "was terminated for doing a bad job and he also made threatening statements after he was terminated." No one confirmed Plaintiff's allegation. To the contrary, one of the four people Plaintiff identified, Zeeshan Elahi, swore under penalty of perjury that he has "never been told by any individual that Mr. Plaintiff was terminated for doing a bad job or that he made threating statements to anyone." Likewise, Tadewos Beyene, another alleged witness, states in his declaration that he went to the Banking Center and was told only that Plaintiff was "no longer working [t]here." The third alleged witness, Abiy Emiru, testified in deposition that he was told that Plaintiff "is not working anymore [t]here'" and was "fired," but heard nothing further. As Plaintiff was, indeed, fired, the statement's truth renders it inactionable. No evidence was presented that the fourth individual, Marcie Dicallo, ever heard such a message.

Likewise, there is no evidence of Statement III, allegedly made to Chex System that Plaintiff's accounts were closed "due to overdraft and fraud." In fact, Plaintiff testified in deposition that his only basis for the allegation that he called the Chex System, gave his social security number and date of birth, asked whether there was any information from Defendant, and was told, "there is negative information from

9

Defendant." Plaintiff presents no evidence regarding the content of this purported negative information.

Finally, Statement IV, which Plaintiff contends Defendant made to the EEOC, is not addressed in Defendant's position statement. Plaintiff's basis for his allegation is the EEOC's letter to him explaining that it was unable to conclude that a violation of the statute occurred. Even then, the language differs from that which Plaintiff quotes. Consequently, nothing in evidence supports Plaintiff's claims.

Count Two brings a claim for intentional or negligent infliction of emotional distress. The facts alleged to support the claim are the same as those alleged in support of Count I. As a result, Count II should be dismissed for the same reasons as Count I.

Whether Count II is construed as a claim for intentional or negligent infliction of emotional distress, the claim fails as a matter of law. Plaintiff presents no evidence of intentional or reckless conduct, conduct that was outrageous or intolerable, or any severe distress necessary to sustain a claim for intentional infliction. Likewise, Plaintiff cannot meet the more stringent standard for negligent infliction because he presents no evidence of negligent conduct, emotional disturbance, or physical injury.

Plaintiff's claim for intentional infliction of emotional

distress fails as a matter of law. "Under Virginia law, intentional infliction of emotional distress requires that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality; (3) the wrongdoer's conduct caused the emotional distress; and (4) the emotional distress was severe." Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (citing Womack v. Eldridge, 215 Va. 338 (1974)). This standard is not met in the case at hand.

First, to demonstrate Defendant's intentional or reckless conduct, Plaintiff must allege that defendant acted "for the specific purpose of inflicting emotional distress upon [him] or that [Defendant] intended [its] specific conduct and knew or should have known that emotional distress would likely result." Ely v. Whitlock, 238 Va. 670, 677 (1989) (citing Womack, 215 Va. at 342). Here, the record contains no evidence that Defendant's employees acted with the purpose or intent to cause Plaintiff emotional distress.

Second, outrageous and intolerable conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russo, 241 Va. at 27 (internal citation omitted). Plaintiff does not present evidence of any such conduct by Defendant's

11

employees. Indeed, the alleged statements here pale in comparison to the types of conduct necessary to be outrageous and intolerable. See, e.g., Baird ex rel. Baird v. Rose, 192 F.3d 462, 472-73 (4th Cir. 1999) (finding sufficiently pled facts of outrageous conduct in case of teacher intentionally humiliating student known to suffer from depression).

Third, Plaintiff cannot establish that he suffered extreme emotional distress "so severe that no reasonable person could be expected to endure it." Russo, 241 Va. at 27. Plaintiff has not proffered evidence suggesting that he suffered from severe emotional distress. Generalized allegations of depression and anxiety are insufficient. See id.

Likewise, Plaintiff's argument for negligent infliction of emotional distress fails as a matter of law. "When conduct is merely negligent, not willful, wanton or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone." Womack, 215 Va. at 340. Virginia's standard requires proof of a physical injury that was "the natural result of fright or shock proximately caused by the defendant's negligence." Myseros v. Sissler, 239 Va. 8, 8 (1990) (citing Hughes v. Moore, 214 Va. 27, 34 (1973)). Plaintiff must show "clear and convincing evidence of 'symptoms' or 'manifestations' of physical injury, not merely of an underlying emotional disturbance." Id. at 12 (emphasis in original).

Plaintiff presents no evidence of negligent conduct and makes no mention of emotional disturbance or physical injury. Summary judgment for Defendant is appropriate on Count II.

Count Three brings a claim for malice. The amended complaint does not specify whether the claim is brought within the context of defamation or as a separate claim. Regardless, summary judgment in favor of Defendant is appropriate.

Common law malice is "defined in the context of defamation as behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made." Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 243 (4th Cir. 1995)(internal citation omitted).

The record does not support a finding that any of Defendant's employees' actions suggested malice. Employees' statements were neither insulting, violent, nor stronger than necessary, and there is no evidence that any of Defendant's employees harbored personal spite or ill will toward Plaintiff. Instead, the record demonstrates that Defendant took appropriate steps in response to Plaintiff's post-termination conduct and did not make any statements that were unsupported by the truth, or publicized beyond a group of individuals who had a common interest in knowing about Plaintiff's actions. Plaintiff's conclusory claim is insufficient in the absence of supporting evidence.

13

Alternatively, construing Plaintiff's action as an attempt to bring a separate claim for "malice," no such claim exists. "Under Virginia law, there is no cognizable cause of action for malice or punitive damages." <u>Augustin v. SecTek, Inc.</u>, 807 F. Supp. 2d 519, 526 (E.D. Va. 2011) (J. Hilton), citing <u>Albright v. Burke & Herbert Bank & Trust Co.</u>, 249 Va. 463, 457 S.E.2d 776, 778 (1995) (affirming a dismissal of a claim for actual and constructive malice).

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

Defendant also moved that this Court strike Exhibit 31 and not consider the exhibit in its decision. However, Exhibit 31 is relevant evidence to this motion and is considered.

An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 20, 2015